UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STANLEY H. PIENTACK and
LINDA S. PIENTACK,

    Plaintiffs,                                      Civil Case No. 12-12435

                                                  HON. MARK A. GOLDSMITH

vs.

JPMORGAN CHASE BANK, N.A.,

Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT (DKT. 22)**

### I.    INTRODUCTION

This is a mortgage foreclosure case. Plaintiffs Stanley H. Pietnack and Linda S. Pientack bring claims of breach of contract, negligence, violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a, and fraud against Defendant JPMorgan Chase Bank, N.A. Compl., Ex. A to Notice of Removal (Dkt. 1-2). Plaintiffs seek damages and an order restraining Defendant from "redeeming" the foreclosed property. Id. Defendant filed an amended motion for summary judgment (Dkt. 22), which is fully briefed (Dkts. 26, 27). The Court conducted oral argument on the motion. For the reasons set forth below, the Court grants Defendant's motion for summary judgment.

### II.    BACKGROUND

1

Plaintiffs entered into a mortgage loan transaction with Mortgage Electronic Registration Systems, Inc. ("MERS"), secured by the property located at 9150 Roe Road, Chelsea, Michigan. Mortgage, Ex. 1 to Def. Mot. (Dkt. 22-2). The mortgage was recorded on September 25, 2003. Id. The mortgage note was for $292,000. Note, Ex. 2 to Def. Mot. (Dkt. 22-3). The note requires Plaintiffs to submit a payment on the first of each month, in the amount of $1,869.71. Id. On October 16, 2010, MERS assigned the mortgage to Defendant JPMorgan Chase Bank, N.A. ("Chase"). Assignment, Def. Ex. 11 (submitted at oral argument on June 13, 2013).

Plaintiffs' bank statements reflect some monthly payments made on the mortgage loan. Bank Statements, Pl. Ex. 4 (Dkt. 26-5). However, according to the bank statements, there were several months in which no mortgage payments were made. There were no mortgage payments made in the following months: December 2007, id. at 41 of 66 (CM/ECF pagination); March 2008, id. at 43-44 of 66; June 2008, id. at 45-46 of 66; September 2008, id. at 48 of 66; and August 2009, id. at 58 of 66. There were no bank statements submitted for August 2010 or later. Several breach letters were sent to Plaintiffs, stating that Plaintiffs had failed to make required monthly payments under the terms of the Note. Def. Ex. 6 (Dkt. 22-7).[1]

In an affidavit, Plaintiff Linda Pientack stated that she made the monthly mortgage loan payments by telephone, and that she paid whatever amount was indicated on the phone by Defendant's agent. Pientack Aff. ¶¶ 3, 4, Ex. 2 to Pl. Resp. (Dkt. 26-3). She affied, "In May 2008, I paid $4720.58 as per the Defendant's instruction to become current on the loan. I was instructed that the next payment was not due until the end of June 2008." Id. ¶ 5. Ms. Pientack

---

[1] The Court notes, however, that the breach letters are sometimes inconsistent with the bank statements. For example, the breach letter sent to Plaintiffs on December 7, 2009, states that Plaintiffs failed to make monthly payments "since 10/01/2009." Breach Letters at 44 of 59 (CM/ECF pagination), Ex 6 to Def. Mot. (Dkt. 22-7). But Plaintiff's bank statements reflect that their loan payments were made on October 2, 2009 and November 3, 2009. Bank Statements at 58-59 of 66.

2

claimed that she received notices indicating that they were behind on payments, but when she called to make a payment "the customer service representative would indicate to [her] whether I had to make any additional payments and the amount stated did not always correspond with the notices." Id. ¶ 6.

Ms. Pientack further states that, prior to her attempt to make the January 2010 payment, Defendant offered Plaintiffs the chance to participate in a loan modification, with the first payment under the loan modification due on March 1, 2010. Id. ¶¶ 7, 8. Trial payment coupons included in the record indicate that Plaintiffs were scheduled for trial loan payments in early 2010, with payments due March 1, April 1, and May 1, and with the monthly loan payment amount set at $1,902.46 per month. Pl. Ex. 5 (Dkt. 26-6). Ms. Pientack claims that she made five consecutive payments prior to the first of each month. Pientack Aff. ¶ 9. The bank statements indicate that there was no payment for January 2010, payments of $1,902.46 per month were made from February 2010 to June 2010, a payment of $2,309.99 was made in July 2010, and no payments were made after July 2010. Bank Statements at 62-66 of 66.

Plaintiff Linda Pientack affies that in August 2010, Defendant refused to accept Plaintiffs' payment, and Plaintiffs never received notification "as to why [their] loan modification was denied." Id. ¶¶ 11, 12. She claims that in April 2011, Defendant refused an offer from Plaintiffs to pay the balance of what was owed from August 2010 to April 2011, in the amount of $20,754.00. Id. ¶ 13.

A notice of foreclosure proceedings was sent to Plaintiffs on November 1, 2010. Affidavit of MCL 600.3205 Notice, Ex. 8 to Def. Mot. at 11 of 12 (CM/ECF pagination) (Dkt. 22-9). On December 30, 2010, notice of the foreclosure sale was published. Affidavit of Publication, id. at 9 of 12. Notice of the foreclosure sale was posted on the property on January

8, 2010.  Id. at 6 of 12.  The foreclosure sale took place on May 12, 2011.  Sheriff's Deed, Ex. 9 to Def. Mot. (Dkt. 22-10).  The redemption period expired one year later, on May 12, 2012.  Notice of Foreclosure Sale, Ex. 8 to Def. Mot. at 3 of 12.

Plaintiffs filed suit in Washtenaw County Circuit Court on May 10, 2012.  On May 14, 2012, a temporary restraining order (TRO) was issued enjoining Defendant from "redeeming the property commonly known as 9150 Roe Road, Chelsea, MI."  TRO, Ex. B to Notice of Removal (Dkt. 1-2).[2]  On June 6, 2012, Defendant removed the case to this Court.

### III.   LEGAL STANDARD

Summary judgment should be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  As the Sixth Circuit has explained,

> Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The burden is generally on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by "showing-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party. Thus, the facts and any inferences that can be drawn from those facts[ ] must be viewed in the light

---

[2] The Court notes that the TRO, which enjoined Defendant from "redeeming" the property, did not toll the redemption period.  First, the TRO was issued two days after the redemption period expired.  Second, although the TRO enjoins Defendant from "redeeming" the property, this terminology is confusing – once a foreclosure sale has occurred, it is the borrower, not the lender, who may redeem the property prior to the expiration of the redemption period.  See Pierson v. Alden State Bank, No. 285525, 2009 WL 1397130, at *3 (Mich. Ct. App. May 19, 2009) (citing Mich. Comp. Laws § 600.3240) (noting that the mortgagor of a foreclosed property may redeem the premises by paying a required amount).  Therefore, the actual import of the TRO is not clear.

In any case, what is clear is that there was no motion to stay the redemption period, and Plaintiffs do not dispute that the redemption period has expired.  The Court concludes that the redemption period expired on May 12, 2012.

most favorable to the non-moving party.

Biegas v. Quickway Carriers, 573 F.3d 365, 373-374 (6th Cir. 2009) (citations omitted).

### IV. ANALYSIS

Defendant's motion seeks summary judgment on the ground that Plaintiffs have not alleged or demonstrated fraud or irregularity in the foreclosure sale process, as is required to challenge a foreclosure after expiration of the redemption period. Defendant also argues that it is entitled to summary judgment on the merits of each of Plaintiffs' claims.

For the reasons set forth below, the Court agrees that Plaintiffs have not claimed fraud or irregularity in the foreclosure sale proceedings. Therefore, under Michigan law, Plaintiffs may not challenge the foreclosure after the expiration of the redemption period. The Court further notes that Plaintiffs have failed to respond to many of Defendant's arguments and that Defendant is entitled to summary judgment on the merits of Plaintiffs' claims of breach of contract and negligence. The Court, therefore, grants the motion for summary judgment.

**A. Requirement of Fraud or Irregularity**

Defendant argues that Plaintiffs lost the right to challenge the foreclosure when the redemption period expired on May 12, 2012. Def. Mot. at 4 (Dkt. 22). Defendant asserts that Plaintiffs' filing the instant lawsuit did not toll the expiration of the redemption period, and that there was no motion filed to stay the redemption period. Id. at 5. Defendant argues that because Plaintiffs have not made a strong showing of fraud or irregularity, Plaintiffs may not now challenge the foreclosure sale.

Defendant further argues that Plaintiffs' claim of fraud does not meet the pleading standards of Federal Rule of Civil Procedure 9(b). Id. at 7-8. Defendant also contends that Plaintiffs' claim of fraud is barred by Michigan's statute of frauds, because Plaintiffs may not

seek to enforce an oral promise against a financial institution. Id. at 8-9.

Plaintiffs respond that they have demonstrated fraud or irregularity sufficient to challenge the foreclosure sale. Pl. Resp. at 7-8 (Dkt. 26). Plaintiffs contend that actions amounting to fraud or irregularity include Defendant "continuously misrepresenting the status of the loan by indicating via telephone that Plaintiffs' account was current" and by refusing Plaintiffs' attempts to make payments in August 2010 and after foreclosure proceedings were initiated. Id. at 8-9. Plaintiffs also argue that they have sufficiently stated a claim for fraud under Rule 9(b) by alleging various misrepresentations made by Defendant's agents over the telephone regarding amounts due on the loan. Id. at 9-10.

Defendant replies that Plaintiffs' allegations of fraud are conclusory, do not properly allege who made the claimed statements, and are barred by the statute of frauds. Def. Rep. at 2-3 (Dkt. 27). Defendant further contends that Plaintiffs do not dispute they were delinquent on their mortgage. Id. at 3. Finally, Defendant asserts that Plaintiffs have not met the requirement of alleging fraud or irregularity because they have not claimed any fraud in the foreclosure sale process itself. Id. at 4.

**1. Plaintiffs have not claimed fraud or irregularity in the foreclosure sale process**

As an initial matter, the Court agrees with Defendant that Plaintiffs have not alleged any defect in the foreclosure sale process itself, and Plaintiffs have therefore not met their burden of showing a fraud or irregularity in the foreclosure process that would allow them to challenge the foreclosure after the expiration of the redemption period.

It is undisputed that the redemption period expired on May 12, 2012. Plaintiffs' filing of the instant lawsuit on May 10, 2012 did not toll the expiration of the redemption period. See Conlin v. Mortg. Elec. Registration Sys., Inc., 714 F.3d 355, 360 (6th Cir. 2013) ("[T]he filing of

a lawsuit is insufficient to toll the redemption period." (citation and quotation marks omitted)). Consequently, to challenge the foreclosure, Plaintiffs have the burden of making a "strong showing of fraud or irregularity." Rugiero v. Flagstar Bank, FSB, No. 11-12312, 2013 WL 1316910, at *10 (E.D. Mich. Mar. 29, 2013). "[T]here must be a clear showing of fraud or irregularity as to the foreclosure proceeding itself, and not simply as to any conduct by a defendant." Houston v. U.S. Bank Home Mtg. Wisconsin Servicing, 505 F. App'x 543, 549 (6th Cir. 2012). In other words, "[t]he purported defect must be in the sale process itself." Pettey v. CitiMortgage, Inc., No. 11-13779, 2012 WL 3600342, at *6 (E.D. Mich. Aug. 21, 2012) (citing Reid v. Rylander, 258 N.W. 630, 631 (Mich. 1935)); see also Palffy v. BSI Fin. Servs., Inc., No. 13-11935, 2013 WL 4718931, at *1 (E.D. Mich. Sept. 3, 2013) ("After the redemption period, the mortgagor can set aside the sale only by showing fraud or irregularity in the foreclosure sale itself.").

 Plaintiffs have not alleged any fraud or irregularity in the foreclosure sale process itself; they have not challenged the notice, publication, or sale procedures. Instead, they have claimed that Defendant made fraudulent statements in the loan servicing process relating to the amounts due on the mortgage loan. However, Plaintiffs' failure to claim fraud or irregularity in the sale process itself defeats their attempt to challenge the foreclosure sale.

 The case relied on by Plaintiffs, Nett v. Wells Fargo Home Mortg. Inc., No. 10-15058, 2011 WL 1519166 (E.D. Mich. Apr. 20, 2011), is distinguishable. In Nett, unlike in the instant case, the plaintiffs claimed that they never received notice of the foreclosure sale date, and did not learn of the foreclosure sale until their home was sold. Id. at *1. The court, reviewing the defendant's motion to dismiss, concluded that the mortgagors could challenge the foreclosure sale because they alleged irregularities. Id. at *3. However, as stated above, Plaintiffs have not

7

alleged that Defendant failed to inform them of the foreclosure sale or that there was a defect in the notice, publication, sale, or other aspect of the foreclosure proceeding itself. See, e.g., Mich. Comp. Laws § 600.3208 (requiring notice of a foreclosure sale to be published for at least four weeks and to be posted on the premises). For this reason, Plaintiffs may not challenge the foreclosure sale after the expiration of the redemption period.

### 2. Plaintiff's claim of fraud

Defendant also presents two grounds for rejecting Plaintiff's claim of fraud: (i) the fraud claim is not pled in accordance with Federal Rule of Civil Procedure 9(b); and (ii) the fraud claim is barred by the statute of frauds. The Court agrees with both grounds.

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." To comply with Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Frank v. Dana Corp., 547 F.3d 564, 570 (6th Cir. 2008) (quoting Gupta v. Terra Nitrogen Corp., 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998)).

Plaintiffs argue that they have met the pleading standard of Rule 9(b) by alleging a statement made on May 25, 2008, and by alleging Defendant's agents continued to misrepresent the status of the loan and the amounts due. Pl. Resp. at 9-10. Although the count of the complaint titled "Fraud" asserts no factual allegations, the allegations to which Plaintiffs refer in their brief, which are contained under the count for "Breach of Contract," state, in pertinent part:

> 12. In 2008, the mortgage was being serviced by WaMu and it failed to correctly apply an extra payment to the arrearage made by Plaintiffs on May 25, 2008 via the telephone in the amount of $4720.58 . . . which made the Plaintiffs' current on their mortgage. . . .

>13. An agent for WaMu, Nancy, informed Plaintiffs via telephone in May 2008 that upon making the payment the Plaintiffs would be current on their mortgage payments and the next payment will be due at the end of June.
>
>14. Although the Plaintiffs continued to make payments on the mortgage, WaMu continued to send statements of deficiencies despite informing Plaintiffs via telephone that they were current on their payments.

Compl. (Dkt. 1-2).

The complaint does not explain why the statement by WaMu's agent, Nancy, was fraudulent; in fact, the complaint alleges that the payment which Nancy told Plaintiffs made them current on their loan did, in fact, make them current on their loan. Indeed, Plaintiffs do not seem to be challenging the truth of any of the statements they identified. Nor have Plaintiffs alleged with sufficient particularity the speaker or date of any statement aside from the May 25, 2008 statement. Finally, the complaint does not allege that Plaintiffs relied on any allegedly fraudulent statements; absent a showing of reliance, Plaintiffs may not recover on a fraud claim. Hi-Way Motor Co. v. Int'l Harvester Co., 247 N.W.2d 813, 815-816 (Mich. 1976). Therefore, the claim of fraud does not meet the required pleading standards.[3]

---

[3] The Court further notes that the count in the complaint demarcated "Fraud" provides that it reiterates the statements and allegations of the preceding paragraphs. Compl. ¶ 40. However, the count of fraud itself does not expressly identify any allegedly fraudulent statements; instead, it contains only conclusory allegations:

>41. Defendant intentionally made false representations of material facts to Plaintiffs regarding the amount of the debt.
>
>42. Defendant's representations were false when they were made.
>
>43. Defendant knew that the representations were false when they were made or they made them recklessly, without knowing whether they were true.

These conclusory allegations, devoid of factual support, do not meet the pleading standards of Rule 9(b). Furthermore, as the Court explains above, Plaintiffs have not pointed to any factual allegations in the complaint as a whole that would sufficiently plead a claim of fraud. Finally,

Furthermore, the Court concludes that the Michigan statute of frauds bars Plaintiffs' attempt to enforce an oral representation made by Defendant, a financial institution. The Michigan statute of frauds, Mich. Comp. Laws § 566.132(2), provides that an oral promise or commitment of a financial institution will not be enforced, where the promise is to "renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation." This statute "plainly states that a party is precluded from bringing a claim – no matter its label – against a financial institution to enforce the terms of an oral promise to waive a loan provision." Crown Tech. Park v. D&N Bank, FSB, 619 N.W.2d 66, 72 (Mich. Ct. App. 2000).

In the instant case, the note governing the parties' obligations under the mortgage loan requires that the borrowers "will pay principal and interest" by making a monthly payment on the first of each month, in the amount of $1,869.71. Note (Dkt. 22-3). The allegedly fraudulent statements regarding the amount of monthly payments due to make Plaintiffs caught up on their loan, or the due date for such payments, constitute a modification or extension of the loan provisions regarding repayment. Plaintiffs are barred from bringing a claim, no matter what the label, against Defendant, a financial institution, to enforce an oral commitment to modify the loan repayment obligations. Plaintiffs have raised no arguments as to why the statute of frauds is not applicable to this case; in fact, Plaintiffs do not respond to Defendant's argument regarding the statute of frauds at all. Therefore, the statute of frauds bars Plaintiffs' claim of fraud against Defendant. See Manire v. Am. Equity Mortg., Inc., No. 04-60278, 2005 WL 2173679, at *2 (E.D. Mich. Sept. 6, 2005) (concluding that the statute of frauds bars claims of intentional and negligent misrepresentation against a mortgage company for alleged oral statements made by the

---

Plaintiffs do not allege in the "Fraud" count or elsewhere in the complaint that they relied on any fraudulent statements.

mortgage company's employee).[4]

Defendant is entitled to summary judgment on the fraud claim. Furthermore, because Plaintiffs have not sufficiently alleged fraud or irregularities in the foreclosure sale process, Plaintiffs are not entitled to challenge the foreclosure sale. However, because the complaint does not seek solely injunctive relief related to the foreclosure sale – it also seeks damages – the Court briefly turns to Plaintiffs' other claims in the complaint.

### B. Plaintiffs' Other Claims: Breach of Contract, Negligence, and Violation of the FDCPA

The complaint brings claims of breach of contract, negligence, and violation of the FDCPA. Defendant's motion argues that Defendant is entitled to summary judgment on each of these claims. Plaintiffs do not respond to Defendant's arguments.

"[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion." Scott v. State of Tenn., 878 F.2d 382, at *2 (Table) (6th Cir. July 3, 1989) (citations omitted). Courts in this district have deemed counts dismissed if the plaintiff fails to respond to arguments made in a dispositive motion. See, e.g., Schull v. CitiMortgage, Inc., No. 11-15643, 2012 WL 4498498, at *4 (E.D. Mich. Sept. 28, 2012) (dismissing two counts of a complaint as waived because"[a] party waives opposition to a motion if the party fails to respond to arguments raised in the motion.").

---

[4] The Court notes that there is some evidence that the breach letters sent to Plaintiffs were inconsistent with bank records of completed payments. As noted above, the breach letter sent to Plaintiffs on December 7, 2009, claims that Plaintiffs had failed to make monthly payments "since 10/01/2009." Breach Letters at 44 of 59. But Plaintiff's bank statements reflect that their loan payments were made on October 2, 2009 and November 3, 2009. Bank Statements at 58-59 of 66. Nevertheless, the complaint does not claim or allege that these breach letters were fraudulent or that Plaintiffs relied on the breach letters. Therefore, Plaintiffs have not sufficiently pled a claim of fraud relating to the breach letters.

11

Because Plaintiffs have failed to respond to or oppose Defendant's arguments regarding the breach of contract, negligence, and FDCPA claims, Defendant is entitled to summary judgment on those claims. Furthermore, as the Court briefly discusses below, Defendant is entitled to summary judgment on the merits of the claims as well.

**1. Breach of contract**

The breach of contract count in the complaint claims that Defendant failed to accept payments from Plaintiffs starting in August 2010 and also failed to accept an offer of the full 9 months' payments from August 2010 to April 2011. Compl., see also Pl. Counter-Statement of Material Facts, Pl. Resp. at 2.

"A party claiming breach of contract must established by a preponderance of the evidence (1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." Miller-Davis Co. v. Ahrens Const., Inc., 817 N.W.2d 609, 619 (Mich. Ct. App. 2012). Defendant argues that it did not breach any terms of the mortgage contract. Def. Mot. at 12-13. Defendant contends that because none of Plaintiffs' payments would have made the loan current, Defendant was under no obligation to accept the payments. Id. at 13.

The Court turns to the relevant contract documents at issue – the note and the mortgage. The note provides that if the borrower does not pay the full amount of each monthly payment on the date it is due, the borrower will be in default. Note (Dkt. 22-3). The mortgage provides, "Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted." Mortgage at 5 of 18 (Dkt. 22-2). Therefore, the mortgage provides that

the Defendant is not obligated to accept a payment if the payment is insufficient to bring the loan current.

The Court has reviewed the bank statements submitted by the parties. The bank statements reveal that no payments were submitted after July 2010. Furthermore, there were no mortgage payments made in December 2007, March 2008, June 2008, September 2008, and August 2009. Plaintiffs have not presented any evidence to show that the missing payments from 2007, 2008, and 2009 were later accounted for – in fact, Plaintiffs have not addressed these missing payments at all.[5] Therefore, there is no dispute in the record that Plaintiffs missed several payments in 2007-2009 and were therefore in default. For this reason, the August 2010 payment, as well as the offer to pay "the balance of what was owed from August 2010 to April 2011," Pientack Aff. ¶ 13, would be insufficient to bring the loan current, because neither payment would account for the missing monthly payments prior to August 2010. Therefore, Defendant, under the terms of the mortgage and note, was not under an obligation to accept such payment, and Plaintiffs have not shown that Defendant breached any contractual term in refusing to accept the payments.

Defendant is entitled to summary judgment on the breach of contract claim.

**2. Negligence**

The negligence claim alleges that Defendant breached a duty to administer the promissory note and mortgage with care. Compl. (Dkt. 1-2); see also Pl. Counter-Statement of Material Facts, Pl. Resp. at 2. Defendant argues that Plaintiffs' negligence claim fails because Plaintiffs have not identified a duty that was allegedly breached, other than duties arising out of

---

[5] Even if the payment of $4,720.58 in May 2008 made Plaintiffs' loan current at that time, see Pientack Aff. ¶ 5, that still leaves the missing payments from later in 2008 and in 2009 unaccounted for.

the mortgage and note. Def. Mot. at 14. The Court agrees with Defendant.

A claim fails to state a cause of action in tort if the claim fails to allege a "violation of a legal duty separate and distinct from the contractual obligation." Rinaldo's Const. Corp. v. Mich. Bell Tel. Co., 559 N.W.2d 647, 658 (Mich. 1997). The court in Rinaldo clarified that although a party's negligent affirmative conduct in performing a contract may subject the party to tort liability for physical harm to persons and tangible things, the tort-based duty to avoid harm does not extend to "intangible economic losses." Id. In this case, Plaintiffs have not alleged that any negligence in performing the contract resulted in physical harm to persons or tangible objects, and Plaintiffs have not identified any independent legal duty outside of the mortgage and note. Therefore, Defendant is entitled to summary judgment on the negligence claim.

### 3. FDCPA

Plaintiffs state that they intend to dismiss their claim that Defendant violated the FDCPA. Pl. Resp. at 3. Accordingly, Defendant is entitled to summary judgment on the FDCPA claim.

## V. CONCLUSION

For the reasons discussed above, the Court grants Defendant's motion for summary judgment (Dkt. 22).

SO ORDERED.


Dated: September 25, 2013           s/Mark A. Goldsmith
    Flint, Michigan                 MARK A. GOLDSMITH
                                       United States District Judge

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 25, 2013.

                                            s/Deborah J. Goltz
                                            DEBORAH J. GOLTZ
                                            Case Manager